**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 17-cv-00306-CMA-NYW

MARK GALLEGOS, an individual,
LISA GALLEGOS, an individual, and
TYLER GALLEGOS, an individual,

      Plaintiffs,

v.

ADAMS COUNTY SCHOOL DISTRICT 14 and
ADAMS CITY HIGH SCHOOL,

      Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

Magistrate Judge Nina Y. Wang

      This matter comes before the court on Defendants Adams County School District 14 (the "District") and Adams City High School's ("ACHS") (collectively, "Defendants") Motion to Dismiss Second Amended Complaint ("Motion to Dismiss"). [#30, filed March 22, 2017]. Also before the court is Plaintiffs' Motion to Amend Complaint ("Motion to Amend"). [#42, filed May 8, 2017]. The Motions were referred to the undersigned Magistrate Judge pursuant to the Order Referring Case dated March 10, 2017 [#21] and the memoranda dated March 23, 2017 [#31] and May 8, 2017 [#43]. After carefully reviewing the Motions and related briefing, the entire case file, and the applicable case law, I respectfully recommend that the Motion to Dismiss be GRANTED and the Motion to Amend be DENIED.

## PROCEDURAL AND FACTUAL BACKGROUND

Plaintiffs Mark Gallegos and Lisa Gallegos and their son Tyler Gallegos,[1] along with daughter Taia Gallegos, initiated this civil action by filing a Complaint in the District Court for Adams County, Colorado on September 26, 2016. [#3]. Plaintiffs named as Defendants the District and ACHS, along with six individuals, and asserted eight statutory, constitutional, and common law claims for relief arising from allegations that the District and certain of its employees had discriminated against Tyler Gallegos and denied him an adequate public education during the school years of 2011 through spring of 2015, when Tyler was a student at ACHS.[2] *See id.* On or about January 10, 2017, Plaintiffs filed an Amended Complaint in state court. *See* [#4]. Plaintiffs served Defendants with the Summons and Amended Complaint the following day. *See* [#1-6]. On February 1, 2017, Defendants removed the action to this District, asserting jurisdiction pursuant to 28 U.S.C. § 1331. *See* [#1].

On March 16, 2017, with the consent of Defendants and leave of court, Plaintiffs filed a Second Amended Complaint that omitted the individuals as defendants and Taia Gallegos as a plaintiff. [#27]. *See also* [#22, #26]. The Second Amended Complaint asserts as claims one and two that Defendants discriminated against Tyler because he is Hispanic, in violation of Title II of the Civil Rights Act of 1964, ("Title II"), 42 U.S.C. § 2000(a) and 42 U.S.C. § 1983, and asserts as claim three that Defendants failed to "develop, implement, and maintain a Section 504

---

[1] The court uses Tyler's first name at times for ease of reference and to distinguish him from his parents who share the same last name. However, the court's use of his first name is not, and should not be construed as, a suggestion that Plaintiff Tyler Gallegos is afforded less respect than any other individual proceeding before this court.

[2] ACHS and the District are indistinct for the purposes of liability and damages. *See Dorsey v. Pueblo School District 60*, 140 F. Supp. 32 1102, 1122 (D. Colo. 2015) (citing Colo. Rev. Stat. § 22-32-101).

assistance plan" to accommodate Tyler's diagnosed disabilities of anxiety disorder and depression, in violation of the Americans with Disabilities Act, 42 U.S.C. §12101, *et. seq.* ("ADA") and the Rehabilitation Act of 1973, ("Rehabilitation Act"), 29 U.S.C. §701, *et. seq.* *See generally* [#27]. Plaintiffs seek monetary damages of an unspecified amount. *See id.*

The supporting allegations are as follows. Prior to entering ACHS, Tyler was evaluated for, and it was determined he had, disabilities that necessitated the implementation of an individual education plan under Section 504 of Title II ("504 Plan"), and that the 504 Plan would be updated annually. [#27 at ¶ 7]. Such a plan was then developed and implemented for Tyler. The 504 Plan was not maintained, however, once Tyler entered ACHS. Additionally, Tyler was subjected to racial and sexual discrimination in that he was "falsely…accused by District employees of criminal acts, … [and of] being a homosexual," and was singled out for discipline because he is Hispanic. [*Id.* at ¶ 9]. During the fall of 2014, members of The Denver Post ("Post"), with Defendants' permission, visited ACHS and interviewed and filmed students, including Tyler, to develop a written and filmed series titled, "Everything Matters." [*Id.* at ¶ 10]. The Post did not obtain permission from parents of the students prior to the interviews or prior to publishing the series. [*Id.*] In early 2015, Plaintiffs filed claims with the Colorado Civil Rights Division complaining of racial and sexual discrimination by the District and its employees. [*Id.* at ¶ 11]. Plaintiffs then filed a claim for retaliation against the District. As a result of the complaints, the District "was required to carry out certain remedial actions…but has failed to fully take care of all responsibilities to which it agreed." [*Id.*] Tyler was subsequently falsely accused of criminal misconduct, accused of breaking certain rules of the ACHS football team, removed from the team, suspended from classes, suspended from ACHS altogether, and placed

in isolation separate from the rest of ACHS's school population. Eventually, Defendants required Tyler to complete his high school diploma by alternative means in the spring of 2015. [*Id.* at ¶ 12]. Plaintiffs suffered financial losses and loss of familial relationships as a direct result of these actions, and Tyler suffered "injuries, damages, and emotional losses." [*Id.* at ¶¶ 13, 14].

On March 22, 2017, Defendants filed the pending Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). [#30]. They argue that the court should dismiss the Title II claim because that statute does not apply to school districts and does not authorize damages, and the § 1983 claim fails because Plaintiffs do not allege similarly situated non-Hispanic students were treated differently. Defendants argue the ADA and Rehabilitation Act claim fails because Plaintiffs do not allege the District discriminated against Tyler due to his disability, and, rather, Plaintiffs allege the District failed to properly maintain the 504 Plan, and thus the cause of action should be brought pursuant to the Individuals with Disabilities in Education Act. [#30].

This court originally set a Scheduling Conference to be held March 24, 2017, and continued the Scheduling Conference to April 4, 2017 at the Parties' request. *See* [#16]. On March 31, 2017, the Parties filed a Joint Motion to Stay discovery and associated deadlines pending resolution of the Motion to Dismiss. *See* [#33]. This court granted the motion in part and vacated the Scheduling Conference. [#36].

On April 12, 2017, Plaintiffs filed a Response to the Motion to Dismiss generally opposing Defendants' contentions, but asserting in the alternative that the court should allow Plaintiffs to amend the pleading rather than dismiss the action. *See* [#37 at 7-8]. Plaintiffs

attached a proposed Third Amended Complaint to their Response. *See* [#37-1]. On May 8, 2017, Plaintiffs filed the pending Motion to Amend, asserting that they were filing it "in the alternative to tie into the arguments [they] have made in their Response to the pending Motion to Dismiss." [#42]. On May 9, 2017, Defendants filed a Reply in support of the Motion to Dismiss. [#44]. On May 16, 2017, Defendants filed a Response to the Motion to Amend, and, on May 23, 2017, Plaintiffs filed a Reply. [#47]. The Motions are now ripe for determination.

## STANDARD OF REVIEW

### I.   Fed. R. Civ. P. 12(b)(1)

Federal courts, as courts of limited jurisdiction, must have a statutory basis for their jurisdiction. *See Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994) (citing *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)). Pursuant to Federal Rule of Civil Procedure 12(b)(1), the court may dismiss a complaint for lack of subject matter jurisdiction. The determination of a court's jurisdiction over subject matter is a question of law. *Madsen v. United States ex. U.S. Army, Corps of Engineers*, 841 F.2d 1011, 1012 (10th Cir. 1987). "A court lacking jurisdiction cannot render judgment but must dismiss the cause *at any stage* of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.,* 495 F.2d 906, 909 (10th Cir. 1974).

### II.   Fed. R. Civ. P. 12(b)(6)

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations … and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120,

1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).

However, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of

the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544,

555 (2007).

Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual

matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009). Plausibility refers "to the scope of the allegations in a complaint: if

they are so general that they encompass a wide swath of conduct, much of it innocent, then the

plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins*

*v. Oklahoma,* 519 F.3d 1242, 1247 (10th Cir. 2008) (citation omitted). "The burden is on the

plaintiff to frame 'a complaint with enough factual matter (taken as true) to suggest' that he or

she is entitled to relief." *Id.* The ultimate duty of the court is to "determine whether the

complaint sufficiently alleges facts supporting all the elements necessary to establish an

entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d

1149, 1160 (10th Cir. 2007).

## III.    Fed. R. Civ. P. 15(a)

This court has not yet held a Scheduling Conference or entered a Scheduling Order to

govern the pre-trial progress of this case. Therefore, this court considers the Motion to Amend

within the confines of Federal Rule of Civil Procedure 15(a) only. *See Fernandez v.*

*Bridgestone/Firestone, Inc.*, 105 F. Supp. 2d 1194, 1195 (D. Colo. 2000) (applying only Rule 15

when the deadline set for amendment in the Scheduling Order has not yet passed). Rule 15(a)

provides that leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P.

15(a).  The court may refuse leave to amend upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment.  *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1365 (10th Cir. 1993).  A general presumption exists in favor of allowing a party to amend its pleadings, *see Foman v. Davis*, 371 U.S. 178, 182 (1962), and the non-moving party bears the burden of showing that the proposed amendment is improper.  *Jefferson County Sch. Dist. No. R-1*, 175 F.3d at 859.  Whether to allow amendment is within the trial court's discretion.  *Burks v. Oklahoma Publ'g Co.,* 81 F.3d 975, 978–79 (10th Cir. 1996).

## ANALYSIS

Defendants argue that the First and Second Claims for Relief are insufficiently pled and should be dismissed pursuant to a Rule 12(b)(6) standard.  Defendants argue that the court lacks subject matter jurisdiction to consider the Third Claim for Relief, and also that is similarly insufficiently pled.  Defendants further oppose the Motion to Amend on the bases of futility and undue delay.  A proposed amendment is futile if the complaint, as amended, would be subject to dismissal.  *Jefferson County Sch. Dist. No. R-1 v. Moody's Investor's Services, Inc.,* 175 F.3d 848, 859 (10th Cir. 1999).  *Accord Conkleton v. Zavaras,* No. 08–cv–02612–WYD–MEH, 2010 WL 6089079, at *3 (D. Colo. Oct. 6, 2010) ("If a party opposes a motion to amend on the grounds of futility, the court applies the same standard to its determination of the motion that governs a motion to dismiss under Fed. R. Civ. P. 12(b)(6).").  Given the related and similar nature of the arguments raised in each Motion and the law applicable to the disposition of each, I address the Motions *pari passu*.

# I.    Claim I:  Title II Discrimination

## A.    Applicable Law

Plaintiffs allege that Tyler was unlawfully discriminated against because he is of Hispanic heritage.  [#27 at ¶ 18].  As relief, Plaintiffs seek only damages, and not injunctive relief.  [*Id.* at 7].  Section 2000a of Title 42 prohibits discrimination or segregation on the ground of race, color, religion, or national origin with respect to "the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of any place of public accommodation."  42 U.S.C. § 2000a(a).  The statute defines "place of public accommodation" as "[e]stablishments affecting interstate commerce or supported in their activities by State action," including but not limited to lodgings, facilities principally engaged in selling food for consumption on the premises, gasoline stations, and places of exhibition or entertainment.  *Id.* at § 2000a(b).  The "overriding purpose of Title II [is] 'to remove the daily affront and humiliation involved in discriminatory denials of access to facilities ostensibly open to the general public.'"  *Daniel v. Paul,* 395 U.S. 298, 307–308 (1969) (citation omitted).  A Title II suit is "private in form only," and a plaintiff pursuing a Title II claim cannot recover damages.  *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400, 401-02 (1968) ("When the Civil Rights Act of 1964 was passed, it was evident that enforcement would prove difficult and that the Nation would have to rely in part upon private litigation as a means of securing broad compliance with the law…If [plaintiff] obtains an injunction, he does so not for himself alone but also as a 'private attorney general,' vindicating a policy that Congress considered of the highest priority.").

**B.     Application**

Defendants do not contest that Tyler is a member of a protected class under Title II, but argue rather that Plaintiffs' claim cannot survive as pled because a public school is not a place of public accommodation and, even if the court finds that a public school satisfies the definition, damages are not available.  [#30 at 4].  Plaintiffs respond that the District, as a Colorado school district, "is subject both to Colorado state law and federal law," and that the court should apply the definition of "public accommodation" as provided in the Colorado Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. §24-34-610(1). [#37 at 3].  Plaintiffs further argue that they are not limited to injunctive relief because they are suing the District not for "facility non-compliance with the Act," but for "the unlawful discriminatory actions of its employees, contractors, or both."  [*Id.* at 5].  Defendants assert in reply that the claim is brought under Title II, and the definition provided in that statute, rather than CADA, should apply.  Finally, they assert that Plaintiffs misconstrue the availability of damages in a Title II action.  [#44 at 2-4].

This court addresses the matter of damages first because it is dispositive. It is undisputed that Plaintiffs seek only damages in this action.  [#27 at 7; #37 at 4-5].  Plaintiffs rely on *Fisher v. Shamburg*, 624 F.2d 156 (10th Cir. 1980) for the contention that they can recover damages from the District because their allegations center on discrimination exacted by the District's employees and/or contractors, not the District itself.  This court is not persuaded by that argument.  The court's reading of *Fisher* indicates that there is an exception to injunctive relief as the exclusive remedy for a Title II violation where the perpetrators of harm are unaffiliated with the place of public accommodation.  *Id.* at 161 ("the Court held that the legislative history of Title II makes it clear that the exclusivity of the Act's injunctive remedy applies only to

actions against the owners and proprietors of public accommodations and not outsiders such as the defendants.") (citing *United States v. Johnson*, 390 U.S. 563 (1968)). The *Fisher* court explained that "[t]he rationale for limiting the remedy to injunctive relief was to provide the proprietor with a judicial determination of whether his facility was covered by Title II before exposing him to civil or criminal liability." *Id.* Therefore, injunctive relief provides real-world effect when applied to "proprietors, owners, and their personnel," but constitutes only a "hollow remedy" when used to deter outsiders from engaging in discriminatory practices aimed at preventing protected classes from using facilities covered under Title II.

Plaintiffs allege that District employees discriminated against Tyler Gallegos. [#27 at ¶¶ 3, 9, 12]. Even assuming that ACHS is a place of public accommodation, their allegations implicate the school's personnel, and are analogous, for instance, to allegations that a restaurant is in violation of Title II because the waitress refused service to a patron of Hispanic origin. Injunctive relief against the District is not a "hollow remedy" because the District has the authority to implement a court order as to its employees.[3] Accordingly, this court agrees with Defendants that Plaintiffs may not recover damages under this claim as pled, and they do not ask for injunctive relief. *See Macer v. Bertucci's Corp.*, No. 13–CV–2994 (JFB)(ARL), 2013 WL 6235607, at *6-7 (E.D.N.Y. Dec. 3, 2013) (granting motion to dismiss Title II claim, in the alternative, because plaintiff sought only damages) (citing *Henry v. Lucky Strike Entertainment, LLC,* No. 10–CV–03682 (RRM)(MDG), 2013 WL 4710488, at *13 (E.D.N.Y. Sept. 1,

---

[3] By contrast, *Fisher* would lend support to a scenario where individuals unaffiliated with the District engaged in discriminatory conduct outside of the ACHS gymnasium, the effect of which prevented Tyler from entering the gym. Injunctive relief against the District in that instance would achieve no real effect because the District has no authority over third parties who happened to engage in discriminatory conduct on or just beyond the District's property.

2013) (granting summary judgment on claims under Section 2000a for monetary relief, because statute's only remedy is injunctive relief); *Ajuluchuku v. Bank of Am. Corp.,* Nos. 3:06–cv–60, 3:06–cv–122, 3:06–cv–228, 3:06–cv–229, 3:06–cv–230, 2007 WL 952015, at *2 (W.D.N.C. March 27, 2007)).

Additionally, although not argued by Defendants, standing to pursue a claim for injunctive relief requires a plaintiff to "demonstrate a good chance of being likewise injured in the future." *Facio v. Jones,* 929 F.2d 541, 544 (10th Cir. 1991). *Accord Barney v. Pulsipher,* 143 F .3d 1299, 1306 n.3 (10th Cir. 1998). Tyler obtained his high school diploma in spring 2015 and no longer attends ACHS or any other school within the District. [#27 at ¶ 12]. Given this fact, and absent allegations of future injury, Plaintiffs appear to lack standing to pursue injunctive relief. Accordingly, I respectfully recommend that the court grant the Motion to Dismiss as to Claim I: Title II Discrimination.[4]

---

[4] Because this court finds that the issue of damages is dispositive, it need not reach Defendants' argument that a public school is not a place of public accommodation. However, for the sake of completeness, this court addresses it briefly and notes that neither it nor the Parties could find controlling case law within this District or Circuit that adjudicated whether a public school is a place of public accommodation for Title II purposes. Nevertheless, this court observes that Plaintiffs provide no authority for grafting the CADA definition of place of public accommodation onto Title II, and that Plaintiffs fail to address the non-binding case law, cited to by Defendants, in which courts in other jurisdictions find unequivocally that public schools are not places of public accommodation under Title II. *See Harless v. Darr,* 937 F. Supp. 1351, 1354 (S.D. Ind. 1996) (rejecting argument that a public school was a place of public accommodation, stating "[p]ublic schools do not purport to be open to the general public in the ways, that for example, hotels, restaurants and movie theaters (all establishments explicitly covered by Title II) do."); *Gilmore v. Amityville Union Free School Dist.*, 305 F. Supp. 2d 271, 278 (E.D.N.Y. 2004) (citing *Harless* with approval and dismissing Title II claim on basis that public schools are not places of public accommodation). *See also Martin v. University of New Haven, Inc.*, 359 F. Supp. 2d 185, 188-89 (D. Conn. 2005) (rejecting on summary judgment the argument that private university's cafeteria constitutes a place of public accommodation, finding that plaintiff "does not provide any evidence to dispute UNH's contention that the cafeteria serves only faculty, staff, and students and does not 'purport to be open to the general public in

## II.    Claim II:  Section 1983 Discrimination

### A.    Applicable Law

As with the First Claim for Relief, Plaintiffs assert that Tyler Gallegos was discriminated against because he is of Hispanic heritage.   Section 1983 of Title 42 of the United States Code allows an injured person to seek damages for the violation of his or her federal rights against a person acting under color of state law.  *See* 42 U.S.C. § 1983; *see also Filarsky v. Delia*, 566 U.S. 377, 383 (2012).  To assert a claim under § 1983, Plaintiff must show (1) that he had a right secured by the Constitution and laws of the United States that was violated (2) by a person who acted under color of state law.  *Hall v. Witteman,* 584 F.3d 859, 864 (10th Cir. 2009).

The Equal Protection Clause requires that no state deny any person within its jurisdiction the equal protection of the laws. U.S. Const. amend. XIV.  An equal protection violation occurs when the government treats someone differently than another who is similarly situated.  *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996) (citing *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985)).   "The Equal Protection Clause does not forbid classifications. It simply keeps governmental decisionmakers from treating differently persons *who are in all relevant respects alike.*"  *Taylor v. Roswell Indep. School Dist.,* 713 F.3d 25, 53 (10th Cir. 2013) (quoting *Nordlinger v. Hahn,* 505 U.S. 1, 10 (1992) (emphasis in original)).   Courts considering an equal protection challenge generally query first whether the challenged state action

---

the ways, that for example, hotels, restaurants and movie theaters (all establishments explicitly covered by Title II) do.'") (quoting *Harless*, 937 F. Supp. at 1354).  In any event, in light of the finding that Plaintiffs cannot recover the relief they request as to this claim, this court declines to weigh in as to whether public schools constitute a public place of accommodation. *See Marsh v. Delaware State University*, No. Civ.A. 05–00087JJF, 2006 WL 141680, at *6 n.4 (D. Del. Jan. 19, 2006) (assuming without deciding that Title II applied to university defendant, citing *Gilmore* and *Harless*, but granting motion to dismiss Title II claim because plaintiff failed to allege the discrimination was a result of his race).

intentionally discriminates between groups of persons. *SECSYS, LLC v. Vigil*, 666 F.3d 678, 685 (10th Cir. 2012) (citations omitted). Second, "after an act of intentional discrimination against a particular group is identified either by presumption or evidence and inference, courts ask whether the state's intentional decision to discriminate can be justified by reference to some upright government purpose." *Id.* at 686 ("[t]he law…may take cognizance of *meaningful* distinctions between individuals without violating the constitutional command of treating similarly situated persons similarly") (emphasis in original). However, some evidence of intentional discrimination against a particular class of persons must be present "[b]efore a court may get to the business of assessing the rationality of a challenged state action." *Id.* at 688 ("The unlawful administration by state officers of a state statute ... is not a denial of equal protection unless there is shown to be present in it an element of intentional or purposeful discrimination.") (quoting *Snowden v. Hughes,* 321 U.S. 1, 8 (1944)).[5]

The Second Amended Complaint names no individual defendants, and thus the question before the court is whether Plaintiffs have pled sufficient facts that, taken as true, state a claim for liability on the part of the District. A school district's liability for violation of the Equal Protection clause is analyzed under a municipal liability framework. *See Murrell v. School Dist.*

---

[5] Although not addressed by the Parties, this court notes that Plaintiffs appear to proceed under a "class of one" theory of equal protection violation. Plaintiffs do not allege that Tyler suffered discrimination along with other students of Hispanic origin, rather, that Tyler alone was discriminated against in part because of his ethnicity. In any event, the distinction does not change the court's analysis. *See SECSYS, LLC*, 666 F.3d at 688-89 ("Analyzing the case through equal protection's so-called 'class of one' doctrinal prism changes nothing. Class of one doctrine focuses on discrimination not between classes or groups of persons, as 'traditional' equal protection doctrine does, but on discrimination against a specific individual. Even so, the familiar principles and procedures associated with equal protection class discrimination doctrine apply.") (quoting *Engquist v. Oregon Dep't of Agric.*, 553 U.S. 591, 601-02 (2008)). A plaintiff advancing a class of one claim must navigate the same two steps as a plaintiff alleging a class-based claim. *Id.*

*No. 1, Denver, Colo.*, 186 F.3d 1238, 1249-50 (10th Cir. 1999) (applying municipal liability analysis to claim that school district was liable for sexual harassment under the Equal Protection Clause). For a school district to incur § 1983 liability, the plaintiff must show that an employee's unconstitutional act occurred pursuant to an official policy or custom of the school district, or that the employee(s) responsible for the unconstitutional act was a final policymaker for the school district. *Id.*

**B.     Application**

Defendants do not contest that Tyler is a member of a protected class under § 1983, but argue that this claim fails as a matter of law because Plaintiffs fail to allege facts demonstrating "that Tyler was treated differently than similarly situated students not in his protected class," and Plaintiffs "fail to adequately plead municipal liability." [#30 at 6, 7]. Plaintiffs disagree that their second claim is inadequately pled, but ask the court for permission to amend the claim as proposed in the Motion to Amend should the court agree with Defendants' argument. *See* [#37 at 8].

"A claim that a state actor discriminated on the basis of a suspect (e.g., race), quasi-suspect (e.g., gender), or a non-suspect classification calls for strict, intermediate, or rational basis scrutiny, respectively." *Brown v. Montoya,* 662 F.3d 1152, 1172–73 (10th Cir. 2011) (citing *Price–Cornelison v. Brooks,* 524 F.3d 1103, 1109–10 (10th Cir. 2008)). But regardless of the nature of the classification, "to assert a viable equal protection claim, plaintiffs must first make a threshold showing that they were treated differently from others who were similarly situated to them." *Id.* (quoting *Barney v. Pulsipher,* 143 F.3d 1299, 1312 (10th Cir. 1998)). The "similarly situated" requirement is an "exacting burden," which requires the comparative

individuals to be "*prima facie* identical in all relevant respects or directly comparable in all material respects." *A.B. ex rel. B.S. v. Adams-Arapahoe 28J School Dist.*, 831 F. Supp. 2d 1226, 1253 (D. Colo. 2011) (analyzing class of one claim and quoting *Jicarilla Apache Nation v. Rio Arriba County,* 440 F.3d 1202, 1210 (10th Cir. 2006) and *U.S. v. Moore,* 543 F.3d 891 (7th Cir. 2008) ("although this is not a precise formula, it is nonetheless clear that similarly situated individuals must be very similar indeed.")). The only allegations asserted in support of the disparate treatment claim are as follows:

> During the course of his attendance at ACHS, and particularly, during the periods of the 2013 to 2014, and 2014 to 2015 school years, Tyler was subjected to racial and sexual discrimination by falsely being accused by District employees of criminal acts, falsely being a homosexual, and subjected to discipline singling him out because he is Hispanic.

[#27 at ¶ 9].

> Tyler was falsely accused of criminal misconduct, later accused of breaking team rules of the ACHS football team, and was incrementally disciplined by being removed from the ACHS football team, being suspended from classes, suspended from ACHS altogether, placed in isolation separate from the rest of ACHS's school population, and eventually was required not to attend school at all, and to complete his high school diploma by alternative means in the Spring of 2015.

[*Id.* at ¶ 12].

> Tyler was reprimanded, singled out, disciplined, suspended from school, and isolated from his classmates, and removed from the ACHS football team in an unlawful and discriminatory fashion because he is Hispanic.

[*Id.* at ¶ 23].

In reviewing the Second Amended Complaint, this court finds that Plaintiffs' pleading is insufficient. The law in this Circuit is clear that a § 1983 claim premised on equal protection requires the plaintiff to first identify others who were similarly situated and treated more favorably than he or she was. *See Brown*, 662 F.3d at 1172–73 ("Mr. Brown's Complaint fails to

allege facts showing that Officer Montoya violated his right to equal protection because it does not allege that an otherwise similarly situated person was treated differently from him."). *See also Taylor*, 713 F.3d at 53–54. Additionally, "in the context of a § 1983 claim, '[c]onclusory allegations are not sufficient to state a constitutional violation.'" *Brown*, 662 F.3d at 1173 (quoting *Robertson v. Las Animas Cnty. Sheriff's Dept.,* 500 F.3d 1185, 1193 (10th Cir. 2007)). Plaintiffs have alleged the adverse treatment Tyler received, and stated summarily that he received that treatment, "because he is Hispanic." But Plaintiffs do not identify or describe any circumstances leading up to the discipline and facts that support that similarly-situated non-Hispanic students and teammates received better treatment. Nor do Plaintiffs allege other facts that allow this court to conclude, if true, that Tyler was "singled out" because he was Hispanic, *e.g.*, that he was the only Hispanic student in his classes or on the football team or that he was subjected to statements that Plaintiffs construed as having discriminatory animus.

Even assuming that Plaintiffs' bare allegations that the District subjected Tyler to disparate treatment based on being Hispanic were sufficient, none of the allegations asserted in the Second Amended Complaint demonstrates that the alleged disparate treatment was the result of an official policy or custom adopted by the District, or was exacted by an employee of the District who had authority to create policy. To subject a governmental entity, in this case a school district, to liability, "a municipal policy must be a 'policy statement, ordinance, regulation, or decision officially adopted and promulgated by [a municipality's] officers.'" *Murrell*, 186 F.3d at 1249 (quoting *Lankford v. City of Hobart,* 73 F.3d 283, 286 (10th Cir. 1996)). *See also Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658 (1978). A municipality may also be held liable if the discriminatory practice is "so permanent and well

settled as to constitute a 'custom or usage' with the force of law." *Murrell*, 186 F.3d at 1249 (quoting *Lankford,* 73 F.3d at 286). Nowhere in the Second Amended Complaint do Plaintiffs assert that the individual ACHS employees identified therein violated Tyler's constitutional rights in furtherance of an official District policy, practice or custom, or that any of the individual employees were policymakers. The operative pleading simply contains insufficient allegations to support municipal liability.

C.    **Proposed Amendments**

Plaintiffs request that the court allow it to amend its operative pleading, to the extent it finds that the Second Amended Complaint is deficient. The proposed Third Amended Complaint associates the specific ACHS employees with their alleged conduct, but Plaintiffs still fail to cure the deficiencies identified above. For instance, Plaintiffs specify that a former principal, former football coach, and several former assistant deans disciplined and generally treated Tyler differently from his peers. *See generally* [#42-1]. However, it is not enough to identify the state actors who allegedly engaged in constitutional violations; Plaintiffs must identify *how* Tyler was treated differently from his similarly-situated peers, and a necessary component of that illustration is identifying or describing those peers and the treatment they received.[6]

_____

[6] Plaintiffs also propose modifying Paragraph 12 of the Second Amended Complaint as follows (proposed allegations in italics): "Tyler was falsely accused of criminal misconduct *by Eva Perez and others*, later accused of breaking team rules of the ACHS football team *by head coach Dan Jazyczk*, and was incrementally disciplined by being removed from the ACHS football *and wrestling* team*s by Dan Jazyczk and Daron Dunson*, being suspended from classes, suspended from ACHS altogether, placed in isolation separate from the rest of ACHS's school population, and eventually was required not to attend school at all, and to complete his high school diploma by alternative means in the Spring of 2015 *by Daron Dunson and Anthony Smith. Tyler was the only student similarly situated who was treated this way by administrators, coaches and teachers*. This final sentence is still too general to cure the pleading deficiencies. Among other things, Plaintiffs fail to provide sufficient factual allegations by which to compare the treatment

In addition, the claims reflected in the proposed Third Amended Complaint are not directed at individual Defendants but at the District. Despite having the benefit of Defendants' arguments in the instant Motion to Dismiss, Plaintiffs' proposed allegations associating the ACHS employees with their respective actions still do not contain facts supporting an inference that the employees are policymakers or were acting in accordance with a District policy or practice. The Tenth Circuit has identified three elements that help determine whether an individual is a final policymaker: "(1) whether the official is meaningfully constrained by policies not of that official's own making; (2) whether the official's decisions are final—i.e., are they subject to any meaningful review; and (3) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority." *Randle v. City of Aurora*, 69 F.3d 441, 448 (10th Cir. 1995) (citation and internal quotation marks omitted). Plaintiffs do not include factual allegations reflecting these elements, nor do they address these elements in their briefing. Indeed, the proposed amendments include allegations that the District's "Board of Education has passed policies in compliance with applicable state and federal laws concerning equal opportunity, non-discrimination, student conduct, and student discipline," and that certain District employees discriminated against Tyler "in violation of federal and state law and District policies." [#42-1 at ¶¶ 7, 10]. The proposed amended pleading offers no description of the authority associated with the individual employees' titles, and does not assert, for instance, that the principal or assistant dean had authority to override a formal policy promulgated by the

---

Tyler received for the court to conclude that the motivation behind Defendants' treatment of him was discriminatory animus.

District.[7]  Nor does the proposed Third Amended Complaint allege that there was any policy or practice—written or unwritten—that the District treat Hispanic students less favorably than other students.

Accordingly, this court finds that the proposed Third Amended Complaint does not contain sufficient allegations regarding disparate treatment or municipal liability to cure the existing deficiencies, and thus respectfully recommends that the Motion to Dismiss be granted as to this claim.[8]

## III.    Claim III:  Violations of the ADA and Rehabilitation Act

### A.    Applicable Law

Plaintiffs assert as their Third Claim for Relief that Defendants violated the ADA and Rehabilitation Act by failing to appropriately maintain the 504 Plan designed to address Tyler Gallegos's special educational needs.  Section 504 of the Rehabilitation Act protects qualified, disabled individuals from being, solely by reason of their disability, excluded from the participation in, denied the benefits of, or subjected to discrimination under any program or activity receiving Federal financial assistance.  29 U.S.C.A. § 794(a).  The Rehabilitation Act

---

[7] I note that under Colorado law, a principal assumes "the administrative responsibility and instructional leadership, under the supervision of the superintendent and in accordance with the rules and regulations of the board of education, for the planning, management, operation, and evaluation of the educational program of the schools to which he is assigned," and "perform[s] such other duties as may be assigned by the superintendent pursuant to the rules and regulations of the board of education."  Colo. Rev. Stat. § 22-32-126(2),(4).

[8] Finally, this court notes that Plaintiffs have been represented at all times, and the proposed Third Amended Complaint represents Plaintiffs' fourth attempt to set forth viable claims.  The circumstances giving rise to this action occurred in the period between 2013 and 2015, and the facts necessary for Plaintiffs to plead a cognizable claim should be in their possession, either through their personal knowledge or developed during the process before the Colorado Civil Rights Division.  As a result, this court respectfully recommends that any general request to amend with a pleading other than the proposed Third Amended Complaint also be denied.

defines "program or activity" to include "all of the operations of ... a department, agency, special purpose district, or other instrumentality of a State or of a local government ... any part of which is extended Federal financial assistance." *Id.* at § 794(b). The ADA is modeled after but broader than the Rehabilitation Act, and "extends similar protections and prohibitions against discrimination to all state and local government services, programs, and activities, regardless of whether they receive federal financial assistance." *Montez v. Romer*, 32 F. Supp. 2d 1235, 1239 (D. Colo. 1999). The ADA similarly provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity," and defines public entity to include "any State or local government; [and] any department, agency, special purpose district, or other instrumentality of a State or States or local government." 42 U.S.C. §§ 12132, 12131. Courts generally construe the Rehabilitation Act and the ADA similarly. *Adams-Arapahoe 28J School Dist.*, 831 F. Supp. 2d at 1254 (construing plaintiffs' Rehabilitation Act and ADA claims together) (citing *Montez*, 32 F. Supp. 2d at 1239; *Miller v. Bd. of Educ.*, 565 F.3d 1232, 1245–46 (10th Cir. 2009)).

###### B.      Application

In the Second Amended Complaint, Plaintiffs allege that "[p]rior to entering ACHS, Tyler had been evaluated and it was determined that he had disability that required the District to formulate, implement and update on not less than a yearly basis, an individual education plan under § 504 of Title II … [and] [p]rior to entering ACHS, a 504 Plan was developed and implemented for Tyler." [#27 at ¶ 7]. Plaintiffs further aver that "[a]fter Tyler entered ACHS, however, the 504 Plan was not maintained." [*Id.* at ¶ 8]. Defendants argue that although

Plaintiffs craft their third claim as one for disparate treatment in violation of the ADA and Section 504 of the Rehabilitation Act, the claim is actually one for denial of a "free appropriate public education" ("FAPE") under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400 *et seq.*, for which exhaustion is required. Plaintiffs assert in Response that Defendants mischaracterize the third claim, and that the District's failure "to adequately develop, maintain and communicate a 504 Plan while Tyler was a student," is "yet another example of unlawful disparate treatment of Tyler in relation to his class peers." [#37 at 9]. They further contend that, to the extent exhaustion of administrative remedies is required, they have done so.

### 1. Legal Theory and Exhaustion

As an initial matter, I find that Plaintiffs have styled this claim properly. As discussed in *Kimble v. Douglas County School Dist. RE-1,* the overlap and distinctions between Section 504 and the IDEA are critical to framing the issue. 925 F. Supp. 2d 1176, 1181 (D. Colo. 2013). The regulations implementing Section 504 track the language of the IDEA, requiring that school districts "provide a [FAPE] to each qualified handicapped person who is in the [district]'s jurisdiction." 34 C.F.R. § 104.33(a). However, "unlike FAPE under the IDEA, FAPE under [Section] 504 is defined to require a comparison between the manner in which the needs of disabled and non-disabled children are met, and focuses on the 'design' of a child's educational program." *Kimble*, 925 F. Supp. 2d at 1181 (quoting *Mark H. v. Lemahieu,* 513 F.3d 922, 933 (9th Cir. 2008) (citing 34 C.F.R. § 104.33(b)(1)). A FAPE under Section 504 requires "the provision of regular or special education and related aids and services that ... are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met." 34 C.F.R. § 104.33(b)(1). Where "the IDEA requires an

individualized program," Section 504 "is a broad anti-discrimination statute." *Kimble*, 925 F. Supp. 2d at 1182 (quoting *N.L. ex rel. Mrs. C. v. Knox Cnty. Sch.,*315 F.3d 688, 696 n.6 (6th Cir. 2003)). The Supreme Court emphasized that the plain language of the IDEA demonstrates that it does not have a preclusive effect upon non-IDEA claims:

> Nothing in [the IDEA] shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the [ADA], title V of the Rehabilitation Act [including § 504], or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under [the IDEA], the [IDEA's administrative procedures] shall be exhausted to the same extent as would be required had the action been brought under [the IDEA].

*See Fry v. Napoleon Community Schools*, 137 S.Ct. 743, 751 & 755-56 (2017) (citing 20 U.S.C. § 1415(*l*) and discussing interplay between IDEA, Title II, and the Rehabilitation Act). Thus, contrary to Defendants' assertion, a cognizable claim for denial of FAPE by failing to implement Tyler's 504 Plan may arise under Section 504.

Nevertheless, the Supreme Court has made it equally clear that a claim arising under the Rehabilitation Act may also be subject to the IDEA's exhaustion requirements under certain circumstances. The IDEA "ensure[s] that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 20 U.S.C. § 1400(d)(1)(A). The IDEA also establishes formal administrative procedures for resolving disputes between parents and schools concerning the provision of a FAPE, and parents who believe the state is denying their child "a free appropriate public education," are entitled to an administrative due process hearing. *See Fry*, 137 S.Ct. at 749; *Ellenberg v. N.M. Military Inst.*, 478 F.3d 1262, 1269 (10th Cir. 2007) (citing 20 U.S.C. § 1415(f)). While the

IDEA should not be construed to preclude claims and remedies under other complimentary statutes like the ADA or Rehabilitation Act, parents who sue under these separate statutes "seeking relief that is also available under [the IDEA]," must first exhaust the IDEA's administrative procedures. *Fry*, 137 S.Ct. at 750. *See also Carroll v. Lawton Indep. Sch. Dist. No. 8*, 805 F.3d 1222, 1227 (10th Cir. 2015) ("[i]f a parent has a complaint with respect to any matter relating to the ... provision of a free appropriate public education to such child ... the IDEA entitles the parent to an impartial due process hearing ... [and an appeal that] must be exhausted before a civil action may be filed in district court under the ADA, Rehabilitation Act, or other Federal laws protecting the rights of [disabled] children"). The exhaustion requirement applies only "if the plaintiff seek[s] relief that is also available under [the IDEA]." *Id. See also Fry*, 137 S.Ct. at 754; *Dorsey v. Pueblo Sch. Dist. 60*, 140 F. Supp. 3d 1102, 1112-13 (D. Colo. 2015) ("*Dorsey I*").

In the Tenth Circuit, the inquiry into whether relief is "available" under the IDEA focuses on "relief for events, condition, or consequences of which the person complains, not necessarily relief of the kind the person prefers or specifically seeks." *Carroll*, 805 F.3d at 1227 (quoting *Padilla ex rel. Padilla v. Sch. Dist. No. 1 in City & Cty. of Denver, Colo.*, 233 F.3d 1268, 1274 (10th Cir. 2000)). What matters is the "source and nature of the alleged injuries for which [the plaintiff] seeks a remedy, not the specific remedy itself." *Padilla*, 233 F.3d at 1274 (citation omitted). "In essence, the dispositive question generally is whether the plaintiff has alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies." *Id.* Failure to exhaust the IDEA's administrative remedies is excused "when administrative remedies would be futile, when they would fail to provide relief, or when an

agency has adopted a policy or pursued a practice of generally applicability that is contrary to the law." *Urban by Urban v. Jefferson Cnty. Sch. Dist. R-1*, 89 F.3d 720, 724 (10th Cir. 1996). *Cf. Padilla*, 233 F.3d at 1274 (observing that plaintiff sought damages "solely to redress the fractured skull and other physical injuries she suffered allegedly as a result of the school district's and board of education's purported ADA violations," and made "no complaints regarding her current educational situation," and thus "the IDEA's administrative remedies, oriented as they are to providing prospective educational benefits, could [not] possibly begin to assuage Plaintiff's severe physical, and completely non-educational, injuries."). If it is unclear whether the IDEA has the ability to remedy a particular injury, exhaustion is required to "give educational agencies an initial opportunity to ascertain and alleviate the alleged problem." *Dorsey I*, 140 F. Supp. 3d at 1113 (quoting *Padilla*, 233 F.3d at 1274). Accordingly, "if the plaintiff brings a claim that is 'educational in nature' that challenges the school district's provision of educational services, 'the claim is presumptively redressable through the IDEA's administrative procedures.'" *Id.* (quoting *Ellenberg*, 478 F.3d at 1280).

After reviewing the Second Amended Complaint and the Parties' briefing associated with the Motion to Dismiss, this court concludes that Plaintiffs were required to first exhaust the IDEA's administrative procedures because the injury complained of is educational in nature, i.e., the District denied Tyler, through suspension and expulsion, educational opportunities to which he was entitled under law, and, at best, it is unclear whether the IDEA provides a remedy for the injury. *See Padilla*, 233 F.3d at 1275 (collecting cases from other circuits requiring exhaustion where the plaintiffs' alleged injuries were educational in nature and noting agreement). Additionally, it is clear that this third claim is not simply about disability discrimination. *Cf.*

24

*Fry*, 137 S.Ct. at 747 (remanding case for lower courts to consider whether the gravamen of the complaint was disability discrimination or denial of a FAPE, noting that the complaint made no mention of "the special education services [plaintiff's] school provided"). Rather, Plaintiffs specifically allege that a Section 504 plan was developed for Tyler and the District through its employees subsequently failed to communicate its particulars or maintain it "in compliance with applicable federal and state law." [#27 at ¶ 8].

Plaintiffs in their Response appear to contend in the alternative that they have exhausted all administrative remedies, an inquiry into exhaustion is premature at this time, and that exhaustion is not required. *See* [#37 at 11]. As to the second contention, Defendants move under Federal Rule of Civil Procedure 12(b)(1) as to the exhaustion issue and the Tenth Circuit has held that the IDEA's remedies must be exhausted before a plaintiff files a non-IDEA suit if that suit could have been filed under the IDEA. *See, e.g., Hayes v. Unified Sch. Dist. No. 377*, 877 F.2d 809, 812 (10th Cir. 1989). *See also Fry*, 137 S.Ct. at 755 ("Section 1415(*l* ) is not merely a pleading hurdle. It requires exhaustion when the gravamen of a complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way."). Accordingly, the issue of exhaustion is properly before the court on Defendants' Motion to Dismiss.

With respect to the first contention, this court finds that Plaintiffs have not sufficiently demonstrated exhaustion of their administrative remedies. Plaintiffs allege the following in their Second Amended Complaint: "During the early months of 2015, Plaintiffs filed claims with the Colorado Civil Rights Division ("OCR") complaining of racial and sexual discrimination by the District and its employees"; and "Plaintiffs have exhausted their administrative remedies." [#27

at ¶ 11]. *See also* [#37 at 10-11]. The governing statute indicates that exhaustion is achieved when a party completes the following process: files an administrative complaint with local school officials, attends a preliminary meeting, proceeds to due process hearing (or mediation), and then appeals the disposition of the hearing, if it is unsatisfactory. *See* 20 U.S.C. § 1415; *Fry*, 137 S.Ct. at 749. *See also Porco v. Lewis Palmer Sch. Dist.* 38, No 16–cv–001584–RBJ, 2017 WL 135159, at *6 (D. Colo. Mar. 2, 2017) (citing *A.F. ex rel Christine B. v. Espanola Pub. Sch.*, 801 F.3d 1245, 1246 (10th Cir. 2015)). The statute does not suggest that filing a claim with the OCR suffices for or excuses exhaustion, and Plaintiffs do not cite authority stating otherwise. Additionally, Plaintiffs' allegation that they have otherwise exhausted their administrative remedies is conclusory, and the court need not accept it as true, particularly in response to a Rule 12(b)(1) challenge. *See Porco*, 2017 WL 135159, at *5 n.7 (citing *Ashcroft*, 556 U.S. at 681).

Finally, as to Plaintiffs' third contention, they generally assert that exhaustion is not necessary and is a question the court need not reach until a later date in the proceedings. I am unpersuaded for the reasons stated above. Additionally, to the extent Plaintiffs have properly exhausted their administrative remedies, such facts would be within their own custody and control and they would require no additional discovery from Defendants to articulate the factual basis for exhaustion; and, to the extent they are somehow excused from exhaustion, their counsel should and could have asserted such an argument.[9] Therefore, this court finds that Plaintiffs

---

[9] Indeed, as noted above, Plaintiffs make no assertion that the alleged discrimination against Tyler was part of a District custom or practice that could excuse exhaustion as a prerequisite to suit. This court also notes that Plaintiffs are not excused from the exhaustion requirement simply because (1) they seek only damages, and (2) Tyler Gallegos is no longer a student enrolled at a school in the District. *See Dorsey I*, 140 F. Supp. 3d at 1113-14 (citing *Cudjoe v. Indep. Sch. Dist. No. 12*, 297 F.3d 1058, 1066–67 (10th Cir. 2002)). "[T]he IDEA's exhaustion requirement will not be excused simply because a plaintiff requests damages, which are ordinarily

have failed to demonstrate that they have exhausted their administrative remedies, and the proposed amended complaint does not cure this defect. Accordingly, this court respectfully recommends that the Motion to Dismiss be granted and the Motion to Amend be denied as to Claim III. However, for the sake of thoroughness, I address below the sufficiency of the pleading of this claim as it relates to the proposed amendments (assuming that failure to exhaust does not bar this claim).

2. Sufficiency of Pleading

A prima facie claim under Section 504 requires Plaintiffs to demonstrate the following: "(1) plaintiff is handicapped under the Act; (2) he is 'otherwise qualified' to participate in the program; (3) the program receives federal financial assistance; and (4) the program discriminates against plaintiff." *Hollonbeck v. U.S. Olympic Comm.,* 513 F.3d 1191, 1194 (10th Cir. 2008) (quoting *Powers v. MJB Acquisition Corp.,* 184 F.3d 1147, 1151 (10th Cir. 1999)).

*Current Allegations*. Plaintiffs assert the following allegations in the Second Amended Complaint in support of their third claim:

---

unavailable in administrative hearings held pursuant to the statute, if [the] alleged injuries could be redressed under the IDEA"; and, the Tenth Circuit has rejected "the argument that exhaustion will be excused because relief is no longer 'available' at the time the plaintiff seeks to file a civil suit if relief was available at the time the alleged injuries occurred." *Cudjoe,* 297 F.3d at 1066-67 ("Plaintiffs should not be permitted to sit on live claims and spurn the administrative process that could provide the educational services they seek, then later sue for damages.") (citation omitted). The question is whether Plaintiffs have "alleged injuries that could be redressed to any degree by the IDEA's administrative procedures and remedies." *Espanola Pub. Sch.,* 801 F.3d at 1247. And, to the extent Plaintiffs assert in the Second Amended Complaint that "a retaliation claim was made after the District retaliated against Tyler for filing the initial complaint with the OCR," and that "[t]he District was required to carry out certain remedial actions as a result of the OCR action, but has failed to fully take care of all responsibilities to which it agreed," they do not raise a claim for retaliation in the operative or proposed amended pleading or otherwise develop such a claim through factual allegations, and they do not reference any such claim in their Response to the Motion to Dismiss. Furthermore, Plaintiffs are represented by attorneys and are not entitled to the liberal construction of pleadings and papers afforded *pro se* litigants.

Tyler had been a student within the District for several years before 2011. Prior to entering ACHS, Tyler had been evaluated and it was determined that he had disabilities that required the District to formulate, implement and update on not less than a yearly basis, an individual education plan under §504 of Title II ("504 Plan"). Prior to entering ACHS, a 504 Plan was developed and implemented for Tyler.

[#27 at ¶¶ 6, 7].

After Tyler entered ACHS, however, the 504 Plan was not maintained; at times was not either communicated to his teachers or not adequately communicated to all of his teachers; and was not kept nor carried out in compliance with applicable federal and state law.

[#27 at ¶ 8].

Despite repeated demands and requests by Tyler, Mark and Lisa, Tyler was denied an appropriate, updated, and complete 504 Plan addressing his special educational needs for at least part of the school year 2012 through 2013, and all of the school years of 2013 through 2014 and 2014 through 2015.

[#27 at ¶ 28].

Defendants contest the fourth element only, and argue Plaintiffs do not allege that Tyler was treated differently than other students because of his disability. *See* [#30 at 7-8]. However, the governing regulations instruct that "the provision of an appropriate education is the provision of regular or special education and related aids and services that (i) are designed to meet individual educational needs of handicapped persons as adequately as the needs of nonhandicapped persons are met and (ii) are based upon adherence to procedures that satisfy" certain statutory requirements. 34 C.F.R. § 104.33(b)(1). Under law, the District "retain[ed] a continuing obligation under Section 504 and the ADA" to protect Tyler from discrimination while he remained "a qualifying student with a disability," and therefore was required to continue to offer any accommodations or services necessary to ensure that Tyler was provided an opportunity for a FAPE under Section 504. *Kimble*, 925 F. Supp. 2d at 1185. Indeed, "it is the

nature of the 504 Plan that it applies solely to Plaintiff, for the exclusive purpose of protecting [his] rights under Section 504 and providing appropriate access to education." *Dorsey v. Pueblo School Dist. 60*, 215 F. Supp. 3d 1082, 1090 (D. Colo. 2016) ("*Dorsey II*"). Therefore, "allegations that Defendants either *intentionally* failed to implement the Plan's accommodations, or knowingly allowed them to be violated, sufficiently state a claim for a violation of § 504 solely on the basis of Plaintiff's disability." *Id.* ("Failing to implement the 504 Plan effectively denies Plaintiff the rights the statute is meant to protect") (citing *New Mexico Assoc. for Retarded Citizens v. State of New Mexico*, 678 F.2d 847, 853 (10th Cir. 1982) (an "education system may be found in violation of Section 504 where the entity's practices preclude the handicapped from obtaining system benefits realized by the non-handicapped") (emphasis added).

"Intentional discrimination does not require a showing of personal ill will or animosity toward the disabled person; rather, 'intentional discrimination can be inferred from a defendant's deliberate indifference to the strong likelihood that pursuit of its questioned policies will likely result in a violation of federally protected rights." *Barber v. Colo. Dep't of Revenue,* 562 F.3d 1222, 1228 (10th Cir. 2009) (quoting *Powers v. MJB Acquisition Corp.,* 184 F.3d 1147, 1153 (10th Cir. 1999)). Therefore, in this context, the test for deliberate indifference comprises two prongs: "(1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that…likelihood." *Id.* at 1229. *Accord Adams-Arapahoe 28J School Dist.*, 831 F. Supp. 2d at 1255. "The failure to act must be more than negligent and involve an element of deliberateness." *J.V. v. Albuquerque Public Schools*, 813 F.3d 1289, 1298 (10th Cir. 2016) (citation omitted). And, "[w]hen the alleged failure to act is an alleged failure to train, we have

required a showing that the defendant was on notice of the need for more or different training." *Id.* (affirming summary judgment to defendant on ADA discrimination claim because plaintiffs fell short of showing that "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.") (citations and internal quotation marks omitted).

A review of the Second Amended Complaint reveals that Plaintiffs have not alleged that the District or the individual ACHS employees acted with the requisite deliberate indifference. *Compare Dorsey I*, 140 F. Supp. 3d at 1116-17 (granting motion to dismiss with leave to amend claim for violation of Section 504 plan, with instruction to develop allegations regarding intentional discrimination to address in relevant part "what the offending employees knew at the time of the alleged harm") *with Dorsey II*, 215 F. Supp. 3d at 1087-91 (denying renewed motion to dismiss, finding in relevant part that amended complaint alleged school district acted with deliberate indifference). Indeed, Plaintiffs assert no allegations of what the District or individual employees of the District knew about Tyler's 504 Plan or need for one; nor do they reference facts as to whether the failure to communicate to, or the inadequate communication between, Tyler's teachers was deliberately indifferent or simply negligent. Therefore, even if Claim III is not precluded based on the failure to exhaust administrative remedies, this court finds that the claim is insufficient as pled. I examine next the proposed amended allegations offered in the Motion to Amend.

*Proposed Allegations*. Plaintiffs propose in relevant part the following allegations:

While Tyler attended ACHS, Neissa Lynch and then thereafter, Gayle Eggloff in conjunction with others not known to Plaintiffs, each had the primary

> responsibility to maintain, update and communicate the 504 Plan of Tyler to his teachers and coaches. This led to Tyler being treated differently than other students with similar 504 Plans and unlawfully not being accommodated compared to other students not subject to 504 Plans throughout his high school career at ACHS.

[#42-1 at ¶ 8].

> After Tyler entered ACHS, however, the 504 Plan was not maintained; at times was not either communicated to his teachers *and coaches* or not adequately communicated to all of his teachers *and coaches by Neissa Lynch, Gayle Eggloff, and others not known but similarly responsible*; and was not kept nor carried out in compliance with applicable federal and state law *causing Tyler to be treated differently than other students with similar 504 Plans and not being accommodated compared to other students not subject to 504 Plans while he was in high school.*

[#42-1 at ¶ 9].[10]

These proposed amendments do not cure the deficiencies identified above and thus are futile. On this additional basis, I recommend that the court deny the Motion to Amend

As I final matter, although not raised by the District, I note that the allegations in the operative complaint implicate Plaintiffs Lisa and Mark Gallegos in only two instances: "As a direct and proximate result of the mistreatment and discrimination against Tyler, Mark and Lisa, as parents and legal guardians of Tyler, suffered financial losses and loss of familial relationships with Tyler resulting in economic damages"; and Mark and Lisa Gallegos "suffered damages…[a]s a direct and proximate result of the actions and inactions of Defendants." [#27 at ¶¶ 13, 30]. These allegations are conclusory and find no support elsewhere in the Second Amended Complaint. In addition, Mark and Lisa Gallegos do not purport, or ask, to sue on behalf of their son, Tyler, who is of majority age, and it is not apparent on what basis they could

---

[10] This court uses italics to differentiate between the language as used in the Second Amended Complaint and the language Plaintiffs propose to modify this paragraph.

represent Tyler. *See* Fed. R. Civ. P. 17(c). *Cf. Dorsey I*, 140 F. Supp. 3d at 1122 (dismissing minor child's mother as a plaintiff in her individual capacity, but allowing her to remain as the parent and representative of the child). Accordingly, this court separately recommends that Plaintiffs Mark and Lisa Gallegos be dismissed from this action because they have failed to state claims individually and have asserted no basis on which to proceed as the representatives of Tyler.

In conclusion, this court again recognizes that leave to amend a pleading should be freely granted when justice so requires, and that a presumption exists in favor of allowing amendment. However, Plaintiffs' proposed amended complaint marks the fourth iteration of their claims and legal theories; they are represented by counsel; and they crafted the proposed amendments with the benefit of having reviewed Defendants' Motion to Dismiss. The proposed Third Amended Complaint is futile in that it does not sufficiently address the exhaustion requirement and does not cure the pleading deficiencies contained in the operative complaint. Thus, I respectfully recommend that the action be dismissed instead of permitting yet another attempt to amend.

## CONCLUSION

For the foregoing reasons, this court respectfully **RECOMMENDS** that:

1. The Motion to Dismiss Second Amended Complaint [#30] be **GRANTED**;

2. The Motion to Amend Complaint [#42] be **DENIED**; and

3. This action be **DISMISSED** without prejudice.[11]

---

[11] Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the

DATED: September 25, 2017                    BY THE COURT:


                                             s/Nina Y. Wang_____
                                             United States Magistrate Judge

---

objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc*., 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).